**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH J. RICCARDO,**

        **Plaintiff *Pro Se*,**

    **vs.**                                                          1:10-CV-462 (NAM/RFT)

**JONATHAN CASSIDY,**

        **Defendant.**
_____

**APPEARANCES:**                                     **OF COUNSEL:**

Joseph J. Riccardo, *Pro Se*
Troy, New York

Bartle, McGrane, Duffy & Jones, LLP           William P. Hessney, Esq.
P.O. Box 448
Troy, New York 12181
*For Defendant*

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiff *pro se* Joseph Riccardo filed a complaint alleging that defendant Jonathan Cassidy violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, by discriminating against him on the basis of his disability[1] because defendant refused to accept plaintiff as a Section 8 tenant and perform the repairs necessary to the rental unit at issue to pass the inspection required for disbursement of Section 8 funds.  Defendant moves pursuant to Rule 12(b)(6) on the basis that it fails to state a claim. Plaintiff opposes dismissal and moves to amend the complaint.

---

[1] In 1988, Congress passed the Fair Housing Amendments Act of 1988 ("FHAA"), amending 42 U.S.C. § 3601 to extend the FHA's coverage to individuals with disabilitites.

**II.     ORIGINAL COMPLAINT**

The following is a summary of the facts and allegations contained in the complaint. Plaintiff resides at 676 4th Avenue, Apartment 1, Troy, New York. The property "is deeded as one . . . parcel, yet Defendant has been leasing it as two . . . separate and distinct dwellings." Defendant is the landlord of that property. Plaintiff is "handicapped or disabled"[2] and works "part-time at a local Walmart [sic] as a People Greeter." Plaintiff recently began receiving "SSI checks" to supplement his pay. As a result of his disability, plaintiff can work only limited hours at Wal-Mart every other day. Working more "would create extreme fatigue and exacerbate Plaintiff's symptoms from his disability."

"Defendant . . . appears to Plaintiff as a perfectly healthy person, with no outstanding . . . physical . . . or cognitive deficits. Defendant has boasted to Plaintiff and members of Plaintiff's family of his stamina and his high amount of strength, which he claimed he obtained over time, working in the laundry at a local hospital."

The property at 676 4th Avenue "was leased to Plaintiff and Plaintiff's wife." On February 27, 2010, plaintiff's wife left him and presently resides in another state. "Plaintiff's wife was the only member of the family capable of paying the rent for both floors of Property 676 and thus, it was her income that paid the rent for the entire property." After plaintiff's wife left, defendant "declared the [l]ease voided."

Defendant offered plaintiff a second lease for the first floor of the property. Plaintiff "mentioned to Defendant that he could not pay the rent as stipulated in Lease 2 without assistance from either the State of New York under the N[ursing] H[ome] T[ransition and] D[iversion]

---

[2]The complaint does not identify plaintiff's disability.

Waiver Program or from the Federal Government under HUD's Section 8 Housing Program."

"Defendant verbally indicated to both Plaintiff and Plaintiff's NHTD Waiver Program coordinator Laura Loughran . . . that Defendant would work with Plaintiff and any and all agencies assisting Plaintiff in order for Plaintiff to receive rental assistance under the Section 8 program for renting Floor 1." Further:

> Defendant verbally represented to both Plaintiff and Ms. Loughran he understood Floor 1 would have to pass any required inspections in order for Plaintiff to receive rental assistance under the Section 8 voucher. Plaintiff has secured a Section 8 voucher and, as his nineteen year-old-son is going to live with Plaintiff, Plaintiff more than satisfies the rental residency requirements the City of Troy, NY has placed on Plaintiff's Section 8 voucher. Defendant verbally represented to Plaintiff and Ms. Loughran that he understood Plaintiff could not pay any rent until rental assistance was secured. The aforementioned verbal representations from Defendant to Plaintiff and Ms. Loughran took place from the period of time on or about March 11, 2010, when Plaintiff signed Lease 2, up until April 9, 2010.

On April 9, 2010, defendant informed plaintiff in writing that he wanted plaintiff "to vacate the residence on the Floor 1" because defendant had not "received any consideration for payment of lease since signing this lease". On April 10, 2010, plaintiff filed a complaint against defendant with the United States Department of Housing and Urban Development alleging discrimination on the basis of disability.

According to the complaint, "Defendant has been totally aware Plaintiff would not be able to pay rent or any form of consideration until Floor 1 passed inspection and Section 8 funds were released to Defendant". Plaintiff alleges that he will not know the portion of rent he will be required to pay until Section 8 funds are released to Defendant. "Plaintiff has been more than willing to help Defendant get Floor 1 in shape to pass inspection so Section 8 monies could be released to Defendant and has verbally stated that to Defendant."

According to the complaint, "almost every weekday from March 22, 2010 to the present,

3

Defendant has been . . . on the second floor . . . getting that floor ready to rent" and despite having the time and resources, has not fixed "Floor 1". Plaintiff further alleges that to rent Floor 1 and Floor 2 as separate units, defendant "would be required by the City of Troy . . . to place a second water meter on the property" but that defendant "was trying to circumvent the City of Troy's requirement that each separate residence needs to have its own water meter."

The allegations in the complaint, plaintiff contends, "clearly indicate Defendant has violated the Fair Housing Act. [Defendant] made verbal representations indicating he would work with Plaintiff and Ms. Loughran to help Plaintiff secure Section 8 funding for Plaintiff and is now acting if [sic] those statements were never made." As a result, plaintiff seeks declaratory and injunctive relief, as well as an award of monetary damages.

### III. DISCUSSION

#### A. Motion to Dismiss

Defendant moves to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a cause of action. To survive a Rule 12(b)(6) motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A complaint should be especially liberally construed when it is submitted *pro se*. *See Jacobs v. Mostow*, 271 Fed.Appx. 85, 87 (2d Cir. 2008) (citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)). The submissions of a *pro se* litigant should be interpreted to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.

2006).

The FHA makes it unlawful "[t]o refuse to sell or rent . . . or otherwise make unavailable or deny a dwelling to any person because of" disability.  42 U.S.C. § 3604.  "To establish discrimination under . . . the FHA[] . . ., plaintiffs have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation. *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45 (2d Cir. 2002)).  Among the discriminatory practices prohibited by the FHA is "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ."  42 U.S.C. § 3604(f)(3)(B).  "Ordinarily, the duty to make reasonable accommodations is framed by the nature of the particular handicap."  *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 301 (2d Cir. 1998).  "'Plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice.'"  *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003) (quoting *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996)).  "A defendant must incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought do not pose an undue hardship or a substantial burden."  *Id*.

Plaintiff's claim in this case is that defendant, after agreeing initially to accept Section 8 funds and to help plaintiff obtain them, later refused to accept Section 8 funds and failed to complete the work required in order for the apartment to pass the inspection necessary for disbursement of Section 8 funds.  The Second Circuit has held that: "Economic discrimination -

5

such as the refusal to accept Section 8 tenants - is not cognizable as a failure to make reasonable accommodations, in violation of § 3604(f)(3)(b)." *Salute*, 136 F.3d at 301; *but see Freeland v. Sisao LLC*, No. CV-07-3741, 2008 WL 906746 at *5 (E.D.N.Y. Dec. 15, 2008) ("Unlike the plaintiffs in *Salute*, plaintiff was already a tenant in defendants' building at the time of her request for acceptance of a Section 8 voucher. Although defendants may choose not to accept Section 8 vouchers from tenants as a matter of policy . . . plaintiff may be able to demonstrate that acceptance of the Section 8 voucher was a reasonable accommodation for her handicap, which was refused, for example, not for economic but for discriminatory reasons."). Thus, plaintiff's claim that defendant's refusal to accept Section 8 vouchers and refusal to perform the work necessary to pass the requisite inspection constitute a failure to make a reasonable accommodation fails to state a plausible claim for relief. *See Salute*, 136 F.3d at 301.

Furthermore, the claims of disability based discrimination in the complaint are conclusory. The complaint contains no specific facts from which a plausible claim of intentional discrimination (disparate treatment) by defendant based on plaintiff's disability can be gleaned. Accordingly, defendant's motion to dismiss is granted and the complaint is dismissed without prejudice.

**B.     Motion to Amend the Complaint**

Plaintiff moves to amend the complaint and has submitted a proposed amended complaint in support of his application. "The court should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). *See also Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000). "However, in determining whether leave to amend should be granted, the district court has discretion to consider, *inter alia*, the apparent 'futility of amendment,'" *id*. (quoting *Foman v.*

6

*Davis*, 371 U.S. 178, 182 (1962).

The original complaint conclusorily alleges that plaintiff is disabled but contains no specific facts regarding his disability.  The proposed amended complaint, to which a decision by the Social Security Administration Office of Disability Adjudication and Review is attached , cures that defect.  According to the decision, plaintiff suffers from, *inter alia*, Parkinson's disease, hypertension, chronic low back pain.  The proposed amended complaint, however, continues to allege that defendant has violated the FHA because he is refusing to ready the apartment for inspection and accept Section 8 vouchers.  The proposed amended complaint, like the original complaint, contains no specific facts alleging that defendant acted for discriminatory reasons in connection with the lease of the apartment at issue or that his policies were discriminatory.  Thus, the proposed amended complaint, for the reasons discussed above, fails to "state a claim to relief that is plausible on its face", *Ruotolo*, 514 F.3d at 188.  Accordingly, plaintiff's motion to file the proposed amended complaint is denied on the ground of futility.

In light of plaintiff's *pro se* status, however, the Court will permit plaintiff an opportunity to submit an amended complaint **within thirty (30) days** from the date of the filing of this Memorandum Decision and Order.  Plaintiff is further cautioned that no portion of any prior complaint shall be incorporated into his amended complaint by reference.  **Plaintiff's failure to file such an amended complaint will result in dismissal of this action without prejudice without further Order of the Court**.

**IV.    CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to dismiss is granted; and it is further

7

**ORDERED** that plaintiff's motion to file the proposed amended complaint is denied; and it is further

**ORDERED** that should plaintiff wish to proceed with this action, he is directed to file an amended complaint **within thirty (30) days** of the filing date of this Memorandum Decision and Order which complies with the pleading requirements of the Federal Rules of Civil Procedure and the terms of this Memorandum Decision and Order; and it is further

**ORDERED** that should plaintiff fail to comply with the terms of this Memorandum Decision and Order within the time period specified above, the Clerk shall enter judgment dismissing this action **without prejudice** without further Order of this Court; and it is further

**ORDERED** that the Clerk shall serve a copy of this Memorandum Decision and Order by certified mail upon plaintiff.

**IT IS SO ORDERED.**

Date:   March 16, 2011

Norman A. Mordue
Chief United States District Court Judge