**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH J. RICCARDO**,

                         **Plaintiff *Pro Se*,**

                                              **1:10-cv-462 (NAM/RFT)**

    vs.

**JONATHAN CASSIDY**,

                         **Defendant.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

Joseph J. Riccardo, *Pro Se*
Troy, New York

Bartle, McGrane, Duffy & Jones, LLP        William P. Hessney, Esq.
P.O. Box 448
251 River Street
Troy, New York 12181
*For Defendant*

**Norman A. Mordue, Chief U.S. District Judge:**

                            **MEMORANDUM DECISION AND ORDER**

**I.    INTRODUCTION**

      This case arises out of a dispute between plaintiff *pro se* Joseph Riccardo and defendant Jonathan Cassidy over a residential lease that defendant sought to terminate on April 9, 2010. Plaintiff commenced this action on April 21, 2010, alleging that defendant violated the Fair Housing and Fair Housing Amendments Acts (collectively, the "FHA"), 42 U.S.C. §§ 3601 *et seq.*, by refusing to accept plaintiff as a Section 8 tenant and refusing to perform repairs necessary to pass the inspection required for disbursement of Section 8 funds. Defendant moved to dismiss that complaint on June 30, 2010, and plaintiff responded by moving to amend his complaint on July 29, 2010.

By Memorandum Decision and Order dated March 16, 2011, this Court granted the motion to dismiss and denied the motion to amend because plaintiff's original and proposed amended complaints were conclusory as to his intentional discrimination claim, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and legally insufficient as to his accommodation claim. *See Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 301 (2d Cir. 1998) ("Economic discrimination — such as the refusal to accept Section 8 tenants — is not cognizable as a failure to make reasonable accommodations, in violation of [the FHA]."). The same Order afforded plaintiff thirty days to file another amended complaint, which he did on April 12, 2011. Defendant now moves to dismiss plaintiff's amended complaint under Federal Rules of Civil Procedure 12(b)(6) and 11(a), arguing that it fails to state a claim on which relief can be granted and that it is not signed.

Although plaintiff did not respond to the motion to dismiss by the return date, he did file a "Motion for Consideration of State Claims under Supplemental Jurisdiction" on November 17, 2011. As discussed more fully below, a liberal reading of this submission reveals that plaintiff is moving to amend the amended complaint with three additional New York state law claims. Defendant opposes this submission on formalistic grounds under Federal Rule of Civil Procedure 6(c) and Local Rule 7.1.[1]

## II. AMENDED COMPLAINT

Plaintiff's amended complaint sets forth substantially the same series of events as his previous complaints, along with several new details that warrant discussion. Plaintiff alleges that he resided at 676 4th Avenue in Troy, New York ("676 4th Avenue") by virtue of a lease-purchase

---

[1] Plaintiff submitted a notice of motion and affidavit of service in reply to defendant's response on November 29, 2011.

2

agreement between his wife and defendant (the "first lease"). 676 4th Avenue consists of two rental units, each occupying one of its two floors. The parties agreed to amend the first lease in October 2009 to include plaintiff as a lessee. By its terms, plaintiff and his wife lived in the first floor apartment and had sole rights to rent or use the second floor apartment.

Plaintiff asserts that he is limited to work as a "part-time at a local Walmart [sic] as a People Greeter" because of his handicap. Plaintiff alleges that he suffers from, *inter alia*, Parkinson's disease and asthma. Plaintiff attached to his amended complaint a favorable Social Security Administration Office of Disability Adjudication and Review decision, which summarizes the effects of his maladies as follows:

> The claimant has the residual functional capacity to sit four hours total in an eight hour workday; requires a cane to stand and/or walk and cannot do so for more than five minutes at one time and cannot do so for more than one hour total in an eight hour workday; cannot perform fine manipulation; cannot perform any repetitive movements of the hands, arms, legs or feet; can perform less than occasional gross manipulation; requires "at will" rest periods during which he must lie down and has limited ability to communicate either verbally or in writing and has limited visual acuity due to blurred vision and cannot be subject to production goals or time limits.

Plaintiff also claims he receives "in-home care and cleaning services[ ]via the New York State Nursing Home Transition and Diversion Waiver Program."

According to the amended complaint, plaintiff's wife left him and moved to another state on February 27, 2010, and "[a]s a result . . . Defendant declared the [first lease] voided." Plaintiff alleges that he and defendant then agreed to a new lease (the "second lease"), which is also attached to the amended complaint. The second lease limits plaintiff to the first floor unit of 676 4th Avenue for a term of one year at $800 per month and requires sixty days notice prior to termination by either party. The second lease also contains an express covenant of habitability. Plaintiff alleges that defendant attempted to terminate the second lease and evict plaintiff for failure to pay rent by

3

letter dated April 9, 2010, but argues "[the second lease] is still in force and that it is a month-to-month lease." Consequently, he has been living at 676 4th Avenue since commencing this action.

In his amended complaint, plaintiff, for the first time, sets forth a litany of specific allegations regarding the condition of 676 4th Avenue's first floor apartment.  First, plaintiff asserts that "over the period of the last year, the majority of his residence has only a plywood and press board sub-floor, with nails and staples coming up out of the sub-floor."  He claims his handicap causes him to "shuffle his feet as he walks," resulting in "minor injuries such cuts [sic], bruises, and injuries to his hands and wrists" when he trips on the protrusions.  According to the amended complaint, although defendant purchased the necessary materials and repaired the floor in the back room, he has not fixed the remainder of the unit.  Plaintiff insists he offered to help defendant lay the new flooring, but defendant still refused.  Plaintiff argues that defendant's failure to fix the floor constituted intentional discrimination on the basis of his disability and a failure to implement a reasonable accommodation in violation of the FHA.

Second, plaintiff alleges that the concrete front steps of 676 4th Avenue have been in disrepair "over the period of last year and to the present."  Specifically, he asserts "that the concrete is broken and chipping off," and that the condition caused him to trip and twist his ankle.  Plaintiff argues that defendant's "lack of action to undertake repairs in his own initiative constitute a failure to provide a reasonable accommodation" violation of the FHA.

Third, plaintiff asserts that "over the period of the last year and to the present there was and continues to be considerable black mold in the residence," which he observed on ceiling tiles and beams, in the bathroom, in the bedroom, in a closet, and on insulation in the back room.  "Plaintiff contends that the black mold constitutes a serious health hazard" because of his disabilities, and as a consequence, his allergies have been "much worse than they should be."  Plaintiff further

4

contends that defendant knew about the problem and even removed some of the moldy insulation in the back room. Nevertheless, plaintiff alleges, defendant did not clear out the rest of the mold despite what would have been a "reasonable" cost to do so. Plaintiff also argues that defendant would have had to clear the mold "to pass inspection by the City of Troy."[2] Plaintiff alleges that defendant's failure to remove the mold constituted intentional discrimination and a failure to implement a reasonable accommodation under the FHA.

Fourth, plaintiff alleges that after entering the second lease, defendant hired a locksmith to put new locks on 676 4th Avenue but refused to have that locksmith place a new lock on a side door to plaintiff's apartment. Plaintiff claims he asked to have the lock installed because he "had an upright freezer situated in the alcove area" between his apartment and the side door. Plaintiff alleges that defendant's refusal to put a lock on the side door was a failure to implement a reasonable accommodation under the FHA.

Fifth, plaintiff asserts that "bare wires exist and constitute a fire hazard to Plaintiff and all who dwell in the whole building." He contends that defendant's failure to cover exposed wiring was a failure to implement a reasonable accommodation under the FHA.

Lastly, plaintiff alleges that 676 4th Avenue had only one functioning water meter serving both apartments. Under the second lease, plaintiff is responsible for half of the building's water costs. According to plaintiff, each rental unit in the City of Troy must have its own water meter and adding a new one would cost $300. He alleges that he asked defendant to install a second meter or fix the non-functional meter, but "Defendant advocated that Plaintiff should conspire with him to

---

[2] Although plaintiff stated details in his previous complaints about what sort of an inspection he alleges 676 4th Avenue would have failed, he does not do so in this complaint. Attached exhibits imply that this is the same Section 8 inspection that plaintiff described in his previous complaints. The Court dismissed plaintiff's legal claims regarding his purported entitlement to the repairs necessary to pass the inspection required for disbursement of Section 8 funds with prejudice in its March 16 Memorandum Decision and Order and will not reconsider them here.

cheat the City of Troy of its proper and legal revenue from water distribution." Plaintiff argues that defendant's failure to put in a second water meter was a failure to implement a reasonable accommodation under the FHA.

Despite these six conditions on the first floor, plaintiff asserts, defendant went out of his way to repair similar conditions on the second floor immediately after the parties entered into the second lease. Furthermore, defendant partially repaired the back room only after he instructed plaintiff to vacate the premises. Plaintiff argues that these actions demonstrate that defendant was favoring future tenants over him, and that defendant failed to make reasonable accommodations by repairing the whole first floor even though he had the means to do so.

### III.  DISCUSSION

Defendant moves to dismiss plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted, and under Rule 11(a) because it is unsigned. Plaintiff has not responded to the motion to dismiss, but now moves to amend the amended complaint.

#### A.  Rule 12(b)(6) Dismissal

Defendant moves to dismiss plaintiff's FHA claims because he is not "handicapped" within the meaning of 42 U.S.C. § 3602(h). Defendant also seeks dismissal of plaintiff's disparate treatment claim under Rule 12(b)(6) because he "fails to link his disability or handicap to any alleged act of discrimination or wrongdoing on the part of the plaintiff," and plaintiff's failure to accommodate claim because the accommodations requested are not "necessary" to allow him to enjoy the use of 676 4th Avenue.

To survive a Rule 12(b)(6) motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)

(quoting *Twombly*, 550 U.S. at 570). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Furthermore, a complaint should be construed liberally when it is submitted *pro se*. *See Jacobs v. Mostow*, 271 Fed. App'x 85, 87 (2d Cir. 2008) (citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)). The special solicitude afforded to *pro se* litigants, *see Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009), however, does not extend this presumption of truth to legal conclusions. *See Iqbal*, 129 S. Ct. at 1949–50.

Plaintiff alleges that defendant's failure or refusal to improve the condition of 676 4th Avenue constitutes disparate treatment and the failure to make a reasonable accommodation.[3] Under the FHA,[4] it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of a sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). "To establish discrimination under . . . the FHA[] . . . , plaintiffs have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45 (2d Cir. 2002)).

### 1.     Plaintiff's Handicap

---

[3] "To establish a *prima facie* case under [a disparate impact] theory, the plaintiff must show: (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Tsombandis*, 352 F.3d at 574–75 (quoting *City of Middletown*, 294 F.3d at 52–53) (internal quotation marks and emphasis omitted). In his amended complaint, plaintiff does not allege that defendant's actions had any impact on anybody besides him, let alone "persons of a particular type." *See id.* Therefore, even a liberal reading of the amended complaint does not suggest a disparate impact claim.

[4] As a threshold matter, the Court recognizes that the FHA applies to defendant for purposes of this motion. The FHA regulates "all" dwellings except religious and private clubs under 42 U.S.C. § 3607, and those dwellings listed under § 3603(b). The amended complaint puts forward facts showing that 676 4th Avenue is neither a religious or private club under § 3607 nor an exempt dwelling listed under § 3603(b).

7

A person is handicapped under the FHA if he or she "(1) [has] a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) [has] a record of having such an impairment, or (3) [is] regarded as having such an impairment." 42 U.S.C. § 3602(h). "Major life activities include 'functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.' " *City of Middletown*, 294 F.3d at 47 (quoting 28 C.F.R. § 41.31(b)(2); 45 C.F.R. § 84.3(j)(2)(ii); 24 C.F.R. § 100.201(b)). Defendant argues that plaintiff "makes a bald assertion that he is handicapped, without any specifications as his [sic] exact limitations and disabilities," and that "the fact he has been awarded social security" alone "is insufficient to establish that Plaintiff is a 'handicapped person' within the meaning of the statute."

In this case, plaintiff adequately alleges that he has a handicap within the meaning of § 3602(h). Plaintiff asserts that he has asthma, that he shuffles his feet when he walks, and that he needs help caring for himself from the New York State Nursing Home Transition and Diversion Waiver program. The Social Security decision attached to plaintiff's amended complaint also describes plaintiff's inability to stand and walk with a cane "for more than five minutes at one time," difficulty with "fine manipulation" and repetitive hand movements, problems with communication, and poor vision. Indeed, plaintiff alleges that he has difficulty performing almost *every* "[m]ajor life activity." *See* 24 C.F.R. § 100.201(b). Therefore, contrary to defendant's argument, plaintiff has pled facts sufficient to establish that he has a handicap under § 3602(h).

## 2. **Disparate Treatment**

To state a claim for disparate treatment, plaintiff must put forth facts showing that he was treated differently than others because of his disability. *Boykin v. Key Corp.*, 521 F.3d 202, 215 (2d Cir. 2008); *see Tsombanidis*, 352 F.3d at 573 (citing *City of Middletown*, 294 F.3d at 45). A liberal

8

reading of the amended complaint suggests that plaintiff is attempting to state a disparate treatment claim by alleging that defendant favored "future tenants" over him in partially repairing the mold and flooring conditions. Plaintiff has not set forth facts regarding his disparate treatment claims sufficient to overcome the motion to dismiss.

Plaintiff asserts that defendant's partial repair of the first floor mold condition "by replacing the drywall was . . . only for the benefit of future tenants," and that "fact that work was performed on Floor 1 after [the attempted eviction on] April 9, 2010 amply proves Defendant had no problems providing reasonable accommodation to future tenants of Floor 1" while "wilfully den[ying]" the same to plaintiff. These statements, that defendant repaired plaintiff's apartment only out of consideration for future tenants and that defendant conducted the repairs after the attempted eviction, fail to show how plaintiff was treated *differently than* any other potential tenant. Plaintiff has been living in the first floor unit since commencing this action, and has enjoyed the benefits of the repairs to the same extent as any future tenant would. These claims are therefore insufficient to state an intentional discrimination claim under the FHA. *See Congdon v. Strine*, 854 F. Supp. 355, 360–61 (E.D. Pa. 1994) (denying intentional disability discrimination claim because defendant's refusal to make repairs "vexed all the tenants, not solely [plaintiff]").

Similarly, plaintiff states that defendant purchased materials required to repair the flooring but that he used them after the attempted eviction to partially repair the second floor and the back room. The fact that defendant partially repaired the flooring on the second floor and in the back room after the attempted eviction does not give rise to a "plausible" suggestion that defendant did so because of plaintiff's disability. *See Ruotolo*, 514 F.3d at 188 (quoting *Twombly*, 550 U.S. at 570). Plaintiff does not state that defendant ever harassed or mistreated handicapped individuals, nor does he state that defendant disfavored handicapped individuals historically or statistically. The

9

mere assertion that "[t]he weight of the facts . . . show Plaintiff has given Defendant no justifiable cause to favor future tenants over Plaintiff" simply does not connect defendant's alleged favoritism to plaintiff's disability, and thus, does not state a claim for intentional discrimination under the FHA. *See Boykin*, 521 F.3d at 214–16 (describing contours of pleading discrimination as requiring, at minimum, some allegations that link misconduct to plaintiff's status); *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 296–97 (S.D.N.Y. 2011) (citing civil rights cases where failure to plead connection between defendant's actions and plaintiff's status resulted in dismissal of discrimination claim).

Put simply, plaintiff has stated no facts that suggest that defendant treated plaintiff differently by refusing to repair the first floor of 676 4th Avenue completely because of plaintiff's disability. Therefore, defendant's motion to dismiss plaintiff's disparate treatment claims must be granted.

**3.     Failure to Accommodate**

"[D]iscrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ." 42 U.S.C. §§ 3604(f)(2), (f)(3)(B). To state a failure to accommodate claim plaintiff must plead facts showing that (1) defendant "knew of [his] handicap or should reasonably expected to know of it," (2) "accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling," and (3) defendant "refused to make such accommodation." *Taylor v. Harbour Pointe Homeowners Ass'n*, 09-cv-257 (JTC), 2011 WL 673903 at *4 (W.D.N.Y. Feb. 17, 2011) (quoting *United States v. Calif. Moblie Home Park Mgmt. Co.*, 107 F. 3d 1374, 1380 (9th Cir. 1997); *Bentley v. Peace & Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005)). Plaintiff's allegations and exhibits

10

regarding his discussions with defendant about obtaining Section 8 funding are sufficient to establish that defendant knew or should have known of his handicap for purposes of the instant motion.

To satisfy the refusal element, "a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." *Taylor*, 2011 WL 673903 at *4 (citing *Schwartz v. City of Treasure Isl.*, 544 F.3d 1201, 1219 (11th Cir. 2008)). Plaintiff states that he asked defendant to repair the water meter and side door lock and offered to help repair the floor himself, but that defendant refused each request.  Plaintiff contends that defendant's "refusal" to repair the front steps and "willful failure to fix or replace the bare wires constitute[] a failure to provide reasonable accommodation."  Likewise, plaintiff states that defendant knew of the mold problem and failed to eradicate it properly or fully when he repaired the back room.  Therefore, viewing the allegations in the amended complaint to raise the strongest arguments they suggest, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), plaintiff has also stated that defendant refused his requests to repair each of the conditions described in the amended complaint.

As to the necessity element, "[o]rdinarily, the duty to make reasonable accommodations is framed by the nature of the particular handicap." *Salute*, 136 F.3d at 301.  Plaintiff alleges that defendant's refusal to install a new lock on his side door, to cover exposed wiring, and to fix the water meter as he requested were failures to accommodate under the FHA, but he fails to allege how these deficiencies relate in any way to his disability.  Plaintiff wanted the lock installed "because Plaintiff had an upright freezer situated in the alcove area, just outside the door of Floor 1," not because he has Parkinson's or asthma.  Plaintiff alleges that "bare wires exist and constitute a fire hazard to Plaintiff and all who dwell in the whole building," but does not state that these

11

wires exacerbate his mobility problems.  Lastly, plaintiff states that he wants the water meter fixed because he "has no desire to cheat any municipality," but does not state that fixing the water meter will accommodate his difficulties with vision, communication, or dexterity.  Because the amended complaint does not suggest that improvement of these conditions will afford plaintiff " 'equal opportunity' to use and enjoy" 676 4th Avenue, *id.* (quoting 42 U.S.C. § 3604(f)(3)), plaintiff cannot show that his handicap gives rise to a duty to add a lock on the side door, to cover exposed wiring, and to fix the water meter.  Therefore, defendant's motion to dismiss plaintiff's accommodation claims as to these conditions must be granted.

Plaintiff's allegations regarding the condition of the floor, mold, and front steps, on the other hand, do show that repairs may have been necessary in order to accommodate plaintiff's handicap.  *See id.*  Plaintiff contends that the "majority" of his apartment "has only a plywood and press board sub-floor, with nails and staples coming up out of the sub-floor."  Plaintiff asserts that condition "has been a danger" because plaintiff's "Parkinson's disease causes him to shuffle his feet as he walks," and that he has tripped and suffered "cuts, bruises, and injuries to his hands and wrists."  Plaintiff also states that "the black mold constitutes a serious health hazard for Plaintiff" in light of his asthma and allergies.  Lastly, plaintiff alleges that the front steps are in such disrepair that, because of his mobility problems, he "tripped . . . and hurt himself by twisting his ankle."  Taking these facts as true for purposes of the motion to dismiss, the amended complaint sufficiently alleges that his particular handicap gives rise to a duty to repair 676 4th Avenue's allegedly hazardous flooring, mold, and front steps.  *Cf. Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 261 (E.D.N.Y. 2009) ("A failure to repair potholes in the driveways is plainly a practice or service that is actionable under the reasonable accommodations provision" of the FHA where the plaintiff had difficulties navigating the driveways in her wheelchair.).

"[I]f the reasonable accommodations provision is triggered, a defendant can be required to incur reasonable costs to accommodate a plaintiff's handicap, provided such accommodations do not pose an undue hardship or substantial burden." *Salute*, 136 F.3d at 300 (internal quotation marks and emphasis omitted). To this end, "[c]ourts conduct a fact-specific analysis of whether an accommodation was required, balancing the benefits of the plaintiff against the burdens to the defendant." *Dinapoli v. DPA Wallace Ave II, LLC*, 07-Civ.-1409 (PAC), 2009 WL 755354 at *5 (S.D.N.Y. Mar. 23, 2009). Defendant argues that he "has taken all reasonable steps to provide an adequate dwelling for the Plaintiff given his physical limitations within the meaning of the [FHA]." Confined to the statements of fact as alleged in the amended complaint, such a determination would be premature at this stage. Plaintiff states that the front steps have not been repaired. Plaintiff alleges that defendant had purchased flooring and additional plywood but refused to install it, even despite the fact that he had already hired contractors to repair similar conditions in the back room and on the second floor. Plaintiff further asserts that whatever repairs to the floor and mold were done did not remedy the conditions to the extent necessary in light of his particular handicap. Therefore, "whether or not defendant[] may have reasonably accommodated plaintiff[] . . . cannot be resolved on a motion to dismiss under the circumstances of this case." *Reyes*, 661 F. Supp. 2d at 262.

**B.     State Law Claims**

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.' " *Triestman*, 470 F.3d at 474 (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)) (emphasis in original). Just as plaintiff has stated a claim under the FHA, the amended complaint *suggests* that plaintiff may have stated a claim for failure to provide reasonable accommodation under New York state law. *See*

13

N.Y. Exec. Law § 296(2-a)(d)(2).  Furthermore, plaintiff states that defendant attempted to evict him without giving him sixty days notice in violation of the language of the second lease.  The second lease, which is attached as an exhibit to the amended complaint, also includes an express promise from defendant to make repairs necessary to ensure that the first floor is habitable.  Consequently, plaintiff's allegations concerning defendant's purported early termination and the unsafe mold and flooring conditions of 676 4th Avenue also *suggest* that plaintiff may have stated New York state law breach of contract and warranty of habitability claims.  Therefore, to the extent that it can be construed to apply to plaintiff's possible state law claims, defendant's motion must be denied.

Defendant argues the amended complaint should be dismissed because plaintiff's assertions "are more applicable to a landlord/tenant law issue and alleged building code violations" traditionally entertained in state courts.  Though his possible state law claims survive the motion to dismiss, plaintiff is cautioned that "claims arising from deficient housing conditions do not involve a uniquely federal interest since 'the area[] of la[n]dlord-tenant law . . . has typically been the province of state courts and legislatures.' "  *Williams v. New York City Hous. Auth.*, 07-Civ.7587 (RJS), 2009 WL 804137 at *9 (S.D.N.Y. Mar. 26, 2009) (quoting *Rivera v. Phipps Houses Servs., Inc.*, 01-Civ.-2324 (HB), 2001 WL 740779 at *3 n.3 (S.D.N.Y. June 29, 2001)).  Should his federal claim fail, "the proper fora for Plaintiff's legal claims" may be the New York state courts as defendant argues.  *Id.*; *see* 28 U.S.C. § 1367(c)(3).

**C.     Rule 11(a) Dismissal**

Defendant seeks to dismiss the amended complaint with prejudice under Rule 11(a) because it is unsigned.  Defendant also urges dismissal because plaintiff "clearly has knowledge and experience not just of New York State legal procedures but also Federal Civil Procedure" in that

14

"he has prepared and submitted multiple pleadings, motions, and affidavits in the matter." Under Federal Rule of Civil Procedure 11(a), "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention," Fed. R. Civ. P. 11(a), and a *pro se* party's typewritten name does not satisfy the signature requirement. *Becker v. Montgomery*, 532 U.S. 757, 764 (2001).

Although plaintiff did not sign his amended complaint, he did commence this action properly by serving his original signed complaint on defendant in April, 2010. *See Montes v. Scully*, No. CV-90-1078, 1993 WL 372266 at *3 (E.D.N.Y. Sept. 1, 1993) (denying Rule 11(a) motion for failure to sign amended petition for *habeas corpus* where original petition was executed properly). Furthermore, plaintiff filed his unsigned complaint on April 12, 2011, and was not notified of his omission until May 5, 2011, nearly a month later. Indeed, "[t]he dismissal of a *pro se* pleading for failure to sign is inappropriate due to the great flexibility accorded a *pro se* litigant, as opposed to a pleading drafted by an attorney." *Dean v. Westchester Cnty. P.R.C.*, 309 F. Supp. 2d 587, 596 (S.D.N.Y. 2004). Therefore, defendant's request to dismiss plaintiff's amended complaint "with prejudice" under Rule 11(a) is denied, but the motion is granted insofar as plaintiff's failure to submit a signed copy of his amended complaint within thirty (30) days will result in dismissal. Plaintiff is directed to file a signed copy of his amended complaint within thirty (30) days of the filing of this Memorandum Decision and Order.

**D.      Plaintiff's Motion for Consideration of State Law Claims**

Plaintiff's "Motion for Consideration of State Law Claims Under Supplemental Jurisdiction" includes a signed document called a "motion" and a supporting memorandum of law. Dkt. No. 25. Plaintiff filed a second motion on November 29, 2011 entitled "Notice of Motion to

15

Strike Defendant's Pleadings"[5] and "Notice of Motion for Consideration of State Claims Under Supplemental Jurisdiction". Dkt. No. 30. These "motion" papers contain the same general factual allegations as the amended complaint with a few new immaterial details, reorganized under three state law theories of recovery: (1) implied warranty of habitability based on the condition of 676 4th Avenue since plaintiff became a party to the first lease; (2) breach of contract based on defendant's termination of the first lease without providing sixty days notice as required thereunder; and (3) housing discrimination under N.Y. Exec. Law § 296(5) for defendant's preference for renters who would also agree to purchase 676 4th Avenue.[6] The "motion" also contains a "prayer for relief in consideration of state law claims," in which plaintiff requests new injunctive, declaratory, and unspecified compensatory relief. The "motion," however, does not overtly state any federal cause of action and does not seek any relief under federal law. A liberal reading of plaintiff's submission thus reveals that he seeks to add state law causes of action and claims for relief to his amended complaint.[7]

Under Local Rule 7(a)(4), "[a] party moving to amend a pleading . . . must attach an unsigned copy of the proposed amended pleading to its motion papers." N.D.N.Y. L.R. 7(a)(4). Plaintiff's submission includes a "motion," akin to a proposed amended pleading, that is signed.

---

[5] Defendant has not yet filed an answer. Thus, plaintiff's motion is premature.

[6] The Court expresses no opinion about the propriety of these claims, but it recognizes that as articulated each are different from those in the amended complaint that survive the motion to dismiss.

[7] Defendant responded to plaintiff's submission on December 19, 2011, with an affidavit and several new exhibits. Plaintiff replied with his own affidavit and exhibits, in which he makes several factual assertions new to his amended complaint and his "motion" for consideration of state law claims. As no factual or legal argument raised in either submission bears any relevance on the sufficiency of plaintiff's amended complaint or the proposed second amended complaint, the Court need not address them at this stage of the litigation. Given the content of both submissions, however, the Court "reminds all parties that they must comply with the applicable rules, and warns that incivility will not be countenanced in the course of this litigation." *Norton-Griffiths v. Wells Fargo Home Mortg.*, 5:10-cv-169, 2011 WL 98318 at *4 (D. Vt. Jan. 12, 2011) (citing *Kyler v. Everson*, 442 F.3d 1251, 1254 (10th Cir. 2006); *Bruhl v. PricewaterhouseCoopers Int'l*, 03-23044-Civ., 2008 WL 2949507 at *6 (S.D. Fla. July 29, 2008)).

Furthermore, unless the Court orders otherwise, "the proposed amended pleading must be a *complete pleading*, which will supercede the original pleading in all respects." *Id.* (emphasis added). Plaintiff's "Motion for Consideration of State Law Claims" attempts to add additional claims for relief to his amended complaint based on state law without restating those claims in his amended complaint based on federal law. Because plaintiff did not attach a complete, unsigned pleading to his motion that would completely supercede the amended complaint, plaintiff's motions (Dkt. Nos. 25 and 30) must be denied without prejudice. *Vanbrocklen v. U.S.*, 1:08-cv-312 (TJM/RFT), 2009 WL 1449042 at *2 (N.D.N.Y. May 21, 2009); *Robinson v. NYS Dep't of Corr. Servs.*, 9:08-cv-911 (TJM), 2008 WL 4560098 at *1–2 (N.D.N.Y. Oct. 8, 2008).

## IV.   CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** that defendant's motion to dismiss the amended complaint under Rule 12(b)(6) is DENIED as to the failure to accommodate claim regarding the condition of 676 4th Avenue's flooring, mold, and front steps, and as to any potential state law contract, warranty, and failure to accommodate claims, and

**ORDERED** that defendant's motion to dismiss the amended complaint under Rule 12(b)(6) is otherwise GRANTED, and

**ORDERED** that defendant's motion to dismiss the amended complaint with prejudice under Rule 11(a) is DENIED, and

**ORDERED** that plaintiff's motion for consideration of state claims (Dkt. No. 25) and motion to strike defendant's pleadings (Dkt. No. 30) are DENIED **without prejudice**, and

**ORDERED** that should plaintiff wish to proceed with this action, he is directed to file a signed copy of his amended complaint **within thirty (30) days** of the filing of this Memorandum-

17

Decision and Order in compliance with Rule 11(a), and

**ORDERED** that should plaintiff fail to comply with the terms of this Memorandum Decision and Order within the time period specified above, the Clerk shall strike the amended complaint from the docket pursuant to Rule 11(a) and enter judgment dismissing this action **without prejudice** without further order of this Court; and

**ORDERED** that the Clerk shall serve a copy of this Memorandum Decision and Order by certified mail upon plaintiff.

**IT IS SO ORDERED.**

Date:   February 28, 2012

Honorable Norman A. Mordue
U.S. District Judge